## CIN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM COLLEY, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| NEIGHBORS CREDIT UNION, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff William Colley ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against Defendant Neighbors Credit Union ("Neighbors" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by his counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action against Neighbors for its failure to properly secure and safeguard Plaintiff's and other similarly situated current and former Neighbors customers' names, Social Security Numbers, dates of birth, financial account information, and/or drivers licenses (collectively, the "Private Information") from hackers.

2.      Neighbors is a federally chartered credit union with its principal place of business located in St. Louis, Missouri. Since 1928, Neighbors has grown to nine branches throughout Missouri. Structured as a financial cooperative, Neighbors describes itself as a "full service

1

financial institution where every member has a voice in how our credit union works, and how each of us is served."[1]

3.      At some time, Neighbors discovered unauthorized access to its network. On or around January 14, 2025, Neighbors concluded that an unauthorized actor, between September 20, 2024, and September 21, 2024, accessed and acquired files containing customers' private, personal identifiable information maintained by Neighbors (the "Data Breach").  **See Exhibit A**.

4.      Plaintiff and "Class Members" (defined below) were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

5.      The Private Information of numerous Class Members that was compromised and exfiltrated in the Data Breach included highly sensitive data that represents a gold mine for data thieves, including but not limited to, full names and Social Security numbers.

6.      Armed with the Private Information accessed and exfiltrated in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses or passports in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

7.      There has been no assurance offered by Neighbors that all Private information exposed in the Data Breach has been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

---

[1] *See* https://www.neighborscu.org/home/about/difference (last visited May 13, 2025).

8.      Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. The Plaintiff and Class Members have suffered concrete injuries in fact including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails and attempts to open fraudulent accounts; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Neighbors's possession and is subject to further unauthorized disclosures so long as Neighbors fails to undertake appropriate and adequate measures to protect the Private Information.

9.      Plaintiff brings this class action lawsuit to address Neighbors's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

10.      The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Neighbors, and thus Neighbors was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

11.     Upon information and belief, Neighbors failed to properly monitor and implement security practices with regards to the computer network and systems that housed the Private Information. Had Neighbors properly monitored its networks, it would have discovered the Breach sooner.

12.     Plaintiff's and Class Members' identities are now at risk because of Neighbors's negligent and/or reckless conduct as the Private Information that Neighbors collected and maintained is now in the hands of data thieves and other unauthorized third parties, who purchased the Private Information on the dark web.

13.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

14.     Accordingly, Plaintiff, on behalf of himself and the Class, asserts claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment.

## PARTIES

15.     Plaintiff William Colley is a natural resident and citizen of Fort Payne, Alabama.

16.     Defendant is a company with its principal place of business located in St. Louis, Missouri.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of a state different from Defendant.

18.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, regularly conducts business in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

19.    Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

**A. <u>Neighbors's Business and Collection of Plaintiff's and Class Members' Private Information</u>**

20.    Neighbors is a member owned financial cooperative. Founded in 1928, Neighbors offers a variety of financial services and products.

21.    In order to conduct its business operations, Neighbors requires that individuals entrust it with highly sensitive personal information. In the ordinary course of providing or receiving services with Neighbors, Plaintiff and Class Members were required to provide their Private Information to Defendant.

22.    In its Privacy Policy, Neighbors states: to its customers that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We maintain physical, electronic, and procedural safeguards that comply with federal regulations and leading industry practices to safeguard your nonpublic personal information."[2]

23.    Because of the highly sensitive and personal nature of the information Neighbors acquires and stores, Neighbors, upon information and belief, promises to, among other things: keep individuals' Private Information private; comply with industry standards related to data security

---

[2] *See*  https://www.neighborscu.org/home/fiFiles/static/documents/PrivacyPolicy.pdf/ (last visited May 13, 2025).

and the maintenance of Private Information; inform individuals of its legal duties relating to data security and comply with all federal and state laws protecting individuals' Private Information; only use and release individuals' Private Information for reasons that relate to the services it provides; and provide adequate notice to affected individuals if their Private Information is disclosed without authorization.

24.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Neighbors assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

25.     Plaintiff and Class Members relied on Neighbors to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendant ultimately failed to do.

**B.    The Data Breach and Neighbors Inadequate Notice to Plaintiff and Class Members**

26.     According to Defendant's Notice, it confirmed unauthorized access to its computer network or systems on or about January 14, 2025.

27.     Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information in September 2024.

28.     On or about May 7, 2025, over five (5) months after learning of the Data Breach, Neighbors began to notify individuals that its investigation determined that their Private Information was accessed and/or acquired certain files by hackers.

29.     Neighbors delivered Data Breach Notification letters to Plaintiff and Class Members, alerting them that their highly sensitive Private Information had been exposed in an "incident."

30.    Neighbors had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

31.    Plaintiff and Class Members provided their Private Information to Neighbors with the reasonable expectation and mutual understanding that Neighbors would comply with its obligations to keep such information confidential and secure from unauthorized access.

32.    Neighbors's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

33.    Neighbors knew or should have known that its electronic records would be targeted by cybercriminals.

**C.    Neighbors Failed to Comply with FTC Guidelines**

34.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

35.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct

any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

36.     The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

37.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

38.     As evidenced by the Data Breach, Neighbors failed to properly implement basic data security practices. Neighbors failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

39.     Neighbors was at all times fully aware of its obligation to protect the Private Information in its possession yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.  Neighbors Failed to Comply with Industry Standards**

40.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

41.    Some industry best practices that should be implemented by businesses like Neighbors include but are not limited to educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

42.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

43.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

44.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**E. Neighbors Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information**

45.    In addition to its obligations under federal and state laws, Neighbors owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Neighbors owed a duty to Plaintiff and Class Members to provide reasonable security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

46.    Neighbors breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Neighbors's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

   a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

   b.    Failing to adequately protect individuals' Private Information;

   c.    Failing to properly monitor its own data security systems for existing intrusions;

   d.    Failing to sufficiently train its employees regarding the proper handling of its individuals Private Information;

   e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

   f.    Failing to adhere to industry standards for cybersecurity as discussed above; and

g.    Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

47.    Neighbors negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

48.    Had Neighbors remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

49.    Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Neighbors.

## F.    Neighbors Should Have Known that Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft

50.    The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[3] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them

---

[3] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* FED. TRADE COMM'N (Oct. 2018), https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on Feb. 5, 2025).

of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

51.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

52.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

53.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

54.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access

accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

55.     One such example of this is the development of "Fullz" packages.

56.     Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

57.     The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information are being misused, and that such misuse is fairly traceable to the Data Breach.

58.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a

freeze on their credit, and correcting their credit reports.[4] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

59.    Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

60.    PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

61.    The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[5] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry.

62.    The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details

---

[4] *See IdentityTheft.gov (Steps),* FED. TRADE COMM'N, https://www.identitytheft.gov/Steps (last visited Feb. 5, 2025).
[5] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. DEP'T OF JUSTICE (Feb. 10, 2020), https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military (last visited on Feb. 5, 2025).

have a price range of $50 to $200.[6] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[7]

63.    Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker.  Beyond things like spamming individuals, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual.  It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks.  This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[8]

64.    The Dark Web Price Index of 2022, published by PrivacyAffairs[9] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
| --- | --- |
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

---

[6] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited on Feb. 5, 2025).
[7] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on Feb. 5, 2025).
[8] *See Dark Web Price Index: The Cost of Email Data*, MAGICSPAM (Sept. 12, 2022), https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/ (last visited on Feb. 5, 2025).
[9] *See* Patricia Ruffio, *Dark Web Price Index 2022*, PRIVACY AFFAIRS (June 10, 2023), https://www.privacyaffairs.com/dark-web-price-index-2022/ (last visited on Feb. 5, 2025).

65.     Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails.  If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

66.     Likewise, the value of PII is increasingly evident in our digital economy.  Many companies including Neighbors collect PII for purposes of data analytics and marketing. These companies, collect it to better target individuals, and shares it with third parties for similar purposes.[10]

67.     One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[11]

68.     Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

69.     A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user.  In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

---

[10] *See Robinhood Financial Entities US Online Privacy Statement*, ROBINHOOD (Jan. 7, 2025), https://robinhood.com/us/en/support/articles/privacy-policy/ (last visited on Feb. 5, 2025).
[11] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 RICH. J. L. & TECH. 11, 14 (2009).

70.    Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs their ability to participate in the economic marketplace.

71.    A study by the Identity Theft Resource Center[12] shows the multitude of harms caused by fraudulent use of PII:



72.    It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[13]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on

---

[12] Steele, Jason, *Credit Card and ID Theft Statistics*, CREDITCARDS.COM (June 11, 2021), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited Feb. 5, 2025).

[13] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), *https://www.gao.gov/products/gao-07-737* (last visited Feb. 5, 2025).

the Web, fraudulent use of that information may continue for years.
As a result, studies that attempt to measure the harm resulting from
data breaches cannot necessarily rule out all future harm.

73.    PII is such a valuable commodity to identity thieves that once the information has

been compromised, criminals often trade the information on the "cyber black market" for years.

74.    As a result, Plaintiff and Class Members are at an increased risk of fraud and

identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but

to vigilantly monitor their accounts for many years to come.

**G. Plaintiff's and Class Members' Damages**
*Plaintiff William Colley's Experience*

75.    Plaintiff is a former customer of Neighbors. When Plaintiff first became a customer

with Neighbors, he was required to provide Neighbors with substantial amounts of his PII for

identity verification.

76.    On or about May 7, 2025, Plaintiff received the Notice in the mail, which told him

that his Private Information had been impacted during the Data Breach.

77.    Plaintiff will now experience a lifetime of increased risk of identity theft and other

forms of targeted fraudulent misuse of his Private Information.

78.    Plaintiff suffered actual injury in the form of time spent dealing with the Data

Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his

accounts for fraud.

79.    Plaintiff would not have provided his Private Information to Defendant had

Defendant timely disclosed that its systems lacked adequate computer and data security practices

to safeguard the personal information in its possession from theft, and that those systems were

subject to a data breach.

80.    Plaintiff suffered actual injury in the form of having his Private Information compromised, stolen, published on the dark web and/or sold by and to other cybercriminals as a result of the Data Breach.

81.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his personal information – a form of intangible property that Plaintiff Colley was required to provide to Defendant for the purpose of being a customer and which was compromised, stolen and exfiltrated in, and as a result of, the Data Breach.

82.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

83.    Plaintiff has a continuing interest in ensuring that his Private Information, which remains in the possession of Neighbors, is protected and safeguarded from future breaches.

84.    As a result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant, as well as long-term credit monitoring options he will now need to use. Plaintiff has spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

85.    As a result of the Data Breach, Plaintiff has suffered anxiety as a result of the release of his Private Information to cybercriminals, which Private Information he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his Private Information for purposes of committing cyber and other crimes against him. Plaintiff is very concerned about this increased,

19

substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach will have on his life.

86.     Plaintiff also suffered actual injury as a result of the Data Breach in the form of (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud he now faces.

87.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

88.     In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

89.     Plaintiff and Class Members entrusted their Private Information to Defendant in order to provide services and/ or receive Defendant's services.

90.     Plaintiff's Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

91.     As a direct and proximate result of Neighbors's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

92.     Further, as a direct and proximate result of Neighbors's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

93.    Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

94.    The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

95.    Plaintiff and Class Members also lost the benefit of the bargain they made with Neighbors. Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Class Members paid to Neighbors was intended to be used by Neighbors to fund adequate security of Neighbors's system and protect their Private Information. Thus, Class Members did not receive what they paid for.

96.    Additionally, as a direct and proximate result of Neighbors's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

97.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

98.     Additionally, Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[14] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[15]

99.     As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

100.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. The contractual bargain entered into between Plaintiff and Neighbors included Defendant's contractual obligation to provide adequate data security, which Defendant failed to provide. Thus, Plaintiff and Class Members did not get what they bargained for.

101.     Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value

---

[14] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD (Apr. 5, 2023), https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/#:~:text=The%20business%20of%20data%20brokering,annual%20revenue%20of%20%24200%20billion. (last visited on Feb. 5, 2025).
[15] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Feb. 5, 2025).

of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

      a.   Monitoring for and discovering fraudulent charges;

      b.   Canceling and reissuing credit and debit cards;

      c.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

      d.   Contacting financial institutions and closing or modifying financial accounts;

      e.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones; and

      f.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

102.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Neighbors, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

103.    As a direct and proximate result of Neighbors's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

104.    Pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action as a nationwide-wide class action on behalf of himself and the following class of similarly situated individuals:

> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Neighbors in May 2025 (the "Class").

105.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

106.    Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

107.    Numerosity. The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiff and exclusively in the possession of Defendant, upon information and belief, thousands of individuals were impacted. The Class is apparently identifiable within Defendant records, and Defendant has already identified these individuals (as evidenced by sending them breach notification letters).

108.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

24

a.  Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

b.  Whether Defendant had respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c.  Whether Defendant had respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d.  Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Plaintiff and Class Members are entitled to actual damages and/or nominal damages as a result of Defendant wrongful conduct; and,

k.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

109.    <u>Typicality</u>. Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

110.    <u>Policies Generally Applicable to the Class.</u> This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

111.    <u>Adequacy.</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

112.    <u>Superiority and Manageability</u>. The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds or thousands of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not

individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

113.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

114.    The litigation of the claims brought herein is manageable. Defendant uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

115.    Adequate notice can be given to Class Members directly using information maintained in Defendant records.

116.    Unless a Class-wide injunction is issued, Defendant may continue in their failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

117.   Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

118.   Likewise, particular issues under Rule 23(c)(2) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether Defendant failed to timely notify the Plaintiff and the class of the Data Breach;

b.   Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.   Whether Defendant security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.   Whether Defendant failure to institute adequate protective security measures amounted to negligence and/or recklessness;

e.   Whether Defendant failed to take commercially reasonable steps to safeguard their employees' Private Information; and,

f.   Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have prevented the Data Breach.

**CLAIMS FOR RELIEF**

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and All Class Members)**

119.    Plaintiff re-alleges and incorporates by reference paragraphs 1-118, as if fully set forth herein.

120.    Neighbors knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

121.    Plaintiff and Class Members entrusted Neighbors with their Private Information with the understanding that Defendant would safeguard and secure their information.

122.    Neighbors had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully accessed or disclosed.

123.    Neighbors had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

124.    Neighbors owed a duty of care to Plaintiff and Class Members to provide data security consistent with federal laws, industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

125.    Neighbors had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Neighbors with their private information was predicated on the understanding that Neighbors would take adequate security precautions. Moreover, only Neighbors had the ability to protect its systems (and the Private Information it

29

stored on them) from attack.

126.   Neighbors's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Neighbors is bound by industry standards to protect confidential Private Information.

127.   Neighbors was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

128.   Moreover, Neighbors had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

129.   Neighbors had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

130.   Neighbors breached their duties, pursuant to the FTC Act and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.   Failing to adequately monitor the security of their networks and systems;

c.   Allowing unauthorized access to Class Members' Private Information;

d.   Failing to detect in a timely manner that Class Members' Private Information had been compromised; and,

e. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

131. Neighbors violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

132. Neighbors's violation of Section 5 of the FTC Act constitutes negligence.

133. Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statute was intended to guard against.

134. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

135. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Neighbors's inadequate security practices and prior notifications to businesses in Neighbors's industry that cybercriminals were targeting their systems and sensitive data.

136. It was foreseeable that Neighbors's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches targeting employers, like Defendant, in possession of Private Information.

137.    Neighbors has or should have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

138.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Neighbors knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Neighbors's systems.

139.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

140.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Neighbors's possession.

141.    Neighbors was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

142.    Neighbors's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

143.    Neighbors has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

144.    But for Neighbors's wrongful, negligent breach of duties owed to Plaintiff and the

Class, the Private Information of Plaintiff and the Class would not have been compromised.

145.    There is a close causal connection between Neighbors's failure to implement adequate security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Neighbors's failure to exercise reasonable care in securing and safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

146.    As a direct and proximate result of Neighbors's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (viii) Plaintiff's Private Information being disseminated on the dark web; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information.

147.    As a direct and proximate result of Neighbors negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

148.    Additionally, as a direct and proximate result of Defendant negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Neighbors's possession and are subject to further unauthorized disclosures so long as Neighbors fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

149.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

150.    Neighbors's negligent and/or reckless conduct is ongoing, in that they still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

151.    Plaintiff and Class Members are also entitled to injunctive relief requiring Neighbors to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**NEGLIGENCE PER SE**
**(On behalf of Plaintiff and the Class)**

152.    Plaintiff re-alleges and incorporates by reference paragraphs 1-118, as if fully set forth herein.

153.    Pursuant to Section 5 of the FTCA, Neighbors had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

154.    Neighbors breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access

controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

155.    Plaintiff and Class Members are within the class of persons that the FTCA is intended to protect.

156.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Neighbors's duty in this regard.

157.    Neighbors violated the FTCA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

158.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Neighbors's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

159.    Neighbors's violations of the FTCA constitute negligence *per se*.

160.    Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to Neighbors's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

161.    As a direct and proximate result of Neighbors's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized

access of their Private Information, including but not limited to damages from the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

162.    Neighbors breached its duties to Plaintiff and the Class under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

163.    As a direct and proximate result of Neighbors's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

164.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Neighbors to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

165.    Plaintiff re-alleges and incorporates by reference paragraphs 1-118, as if fully set herein.

166.    Neighbors provides banking and financial services to Plaintiff and Class Members. Plaintiff and Class Members formed and implied contract with Neighbors regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for services from Neighbors.

167.    Through Defendant's business relationship with Plaintiff and Class Members, it knew or should have known that it must protect their confidential Private Information in accordance with Neighbors policies, practices, and applicable law.

168.    As consideration, Plaintiff and Class Members paid money to Neighbors and/or turned over valuable Private Information to Neighbors. Accordingly, Plaintiff and Class Members bargained with Neighbors to securely maintain and store their Private Information.

169.    Neighbors accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing or receiving services.

170.    In delivering their Private Information to Neighbors and/or paying for services, Plaintiff and Class Members intended and understood that Neighbors would adequately safeguard the Private Information as part of that service.

171.    Neighbors's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

172.    Plaintiff and Class Members would not have entrusted their Private Information to Neighbors in the absence of such an implied contract.

173.    Had Neighbors disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Neighbors.

174.    Neighbors recognized that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

175.    Neighbors violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

176.    Plaintiff and Class Members have been damaged by Neighbors's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

177.    Plaintiff re-alleges and incorporates by reference paragraphs 1-118, as if fully set forth herein.

178.    This Count is pleaded in the alternative to Count III above.

179.    Plaintiff and Class Members conferred a benefit on Neighbors by turning over their Private Information to Defendant in exchange for cybersecurity protection to sufficient to safeguard their Private Information. Plaintiff and Class Members did not receive such protection.

180.    As such, a portion of the revenue made from Plaintiff's and Class Members' contribution is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Neighbors.

181.    Neighbors has retained the benefits of its unlawful conduct that should have been used for adequate cybersecurity practices that it failed to provide.

182.    Neighbors knew that Plaintiff and Class Members conferred a benefit upon it, which Neighbors accepted. Neighbors profited from and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the earnings emanating therefrom for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

183.    If Plaintiff and Class Members had known that Neighbors had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

184.    Due to Neighbors's conduct alleged herein, it would be unjust and inequitable under the circumstances for Neighbors to be permitted to retain the benefit of its wrongful conduct.

185.    As a direct and proximate result of Neighbors's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Neighbors's possession and is subject to further unauthorized disclosures so long as Neighbors fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to

prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

186.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Neighbors and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Neighbors from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

187.   Plaintiff and Class Members may not have an adequate remedy at law against Neighbors, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class described above, seeks the following relief:

a.   An order certifying the Class, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.   Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.   An order instructing Neighbors to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.  An order requiring Neighbors to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

Dated: May 13, 2025

By: */s/ John F. Garvey*
John F. Garvey, #35879 (MO)
Colleen Garvey, #72809 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com

J. Gerard Stranch, IV (TN BPR #23045)*
Grayson Wells #73068 (MO)
**STRANCH, JENNINGS, & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: 615/254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

Jonathan S. Mann (ASB-1083-A36M)*
**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
jonm@pittmandutton.com

*Attorneys for Plaintiff and the Putative Class*

**Pro Hac Vice* application forthcoming