**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **ROXANNE PUTNEY, MICHAEL HOLLIS, THERESA JOHNSON, STEVEN BEINART, LEANDER BEATTY JR., AND GLORIA SHORT-SHUMATE,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NEIGHBORS CREDIT UNION**,<br><br>Defendant. | Case No. 4:25-CV-00687-SRC<br><br>**DEMAND FOR JURY TRIAL**<br><br>CLASS ACTION |

## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Roxanne Putney, Michael Hollis, Theresa Johnson, Steven Beinart, Leander Beatty Jr., and Gloria Short-Shumate (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendant Neighbors Credit Union ("Neighbors" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief based on the investigation by their counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. Plaintiffs bring this class action against Neighbors for its failure to properly secure and safeguard Plaintiffs' and other similarly situated current and former Neighbors customers' names, Social Security numbers, dates of birth, financial account information, and/or driver's license numbers (collectively, the "Private Information") that was impacted in a data breach that Defendant publicly disclosed on or about May 8, 2025 (the "Data Breach" or "Breach").

2. Neighbors is a credit union with its principal place of business located in St. Louis, Missouri. Since 1928, Neighbors has grown to nine branches throughout Missouri. Structured as a financial cooperative, Neighbors describes itself as a "full service financial institution where every member has a voice in how our credit union works, and how each of us is served."[1]

3. On or around January 14, 2025, Neighbors concluded that an unauthorized actor, between September 20, 2024 and September 21, 2024, accessed and acquired files containing customers' Private Information maintained by Neighbors in the Data Breach.

4. Plaintiffs and "Class Members" (defined below) were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

5. The Private Information of numerous Class Members that was compromised and exfiltrated in the Data Breach included highly sensitive data that represents a gold mine for data thieves, including but not limited to, full names and Social Security numbers.

6. Armed with the Private Information accessed and exfiltrated in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses or passports in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

7. There has been no assurance offered by Neighbors that all Private Information exposed in the Data Breach has been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

---

[1] *See* https://www.neighborscu.org/home/about/difference (last visited May 13, 2025).

8. Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. The Plaintiffs and Class Members have suffered concrete injuries in fact including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails and attempts to open fraudulent accounts; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Neighbors's possession and is subject to further unauthorized disclosures so long as Neighbors fails to undertake appropriate and adequate measures to protect the Private Information.

9. Plaintiffs bring this class action lawsuit to address Neighbors's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

10. The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to Neighbors, and thus Neighbors was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

11. Upon information and belief, Neighbors failed to properly monitor and implement security practices with regards to the computer network and systems that housed the Private Information. Had Neighbors properly monitored its networks, it would have discovered the Breach sooner.

12. Plaintiffs' and Class Members' identities are now at risk because of Neighbors's negligent and/or reckless conduct as the Private Information that Neighbors collected and maintained is now in the hands of data thieves and other unauthorized third parties, who purchased the Private Information on the dark web.

13. Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

14. Accordingly, Plaintiffs, on behalf of themselves and the Class, bring claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment.

## PARTIES

15. Plaintiff, Roxanne Putney, is a natural person and citizen of Ballwin, Missouri, where she intends to remain.

16. Plaintiff, Michael Hollis, is a natural person and citizen of Jennings, Missouri, where he intends to remain.

17. Plaintiff, Theresa Johnson, is a natural person and citizen of St. Louis, Missouri, where she intends to remain.

18. Plaintiff, Steven Beinart, is a natural person and citizen of Fenton, Missouri, where he intends to remain.

19. Plaintiff, Leander Beatty Jr., is a natural person and citizen of St. Louis, Missouri, where he intends to remain.

20. Plaintiff, Gloria Short-Shumate, is a natural person and citizen of St. Louis, Missouri, where she intends to remain.

21. Defendant is a credit union organized under the laws of the State of Missouri, with its principal place of business located at 6300 S Lindbergh Blvd, St. Louis, Missouri, 63123.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiffs Colley and Wilbur, is a citizen of a state different from Defendant.

23. This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly conducts business in this District, and the acts and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

24. Venue is proper under 18 U.S.C § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Neighbors's Business and Collection of Plaintiffs' and Class Members' Private Information

25. Neighbors is a member-owned financial cooperative. Founded in 1928, Neighbors offers a variety of financial services and products.

26. In order to conduct its business operations, Neighbors requires that individuals entrust it with highly sensitive personal information. In the ordinary course of providing or receiving services with Neighbors, Plaintiffs and Class Members were required to provide their Private Information to Defendant.

27. In its Privacy Policies, Neighbors states to its customers that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We maintain physical, electronic, and procedural safeguards that comply with federal regulations and leading industry practices to safeguard your nonpublic personal information."[2]

28. Because of the highly sensitive and personal nature of the information Neighbors acquires and stores, Neighbors promises to, among other things: keep individuals' Private Information private; comply with industry standards related to data security and the maintenance of Private Information; inform individuals of its legal duties relating to data security and comply with all federal and state laws protecting individuals' Private Information; only use and release individuals' Private Information for reasons that relate to the services it provides; and provide adequate notice to affected individuals if their Private Information is disclosed without authorization.

29. Despite recognizing its duty to do so, Neighbors has not implemented reasonably cybersecurity safeguards or policies to protect its customers' Private Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a

---

[2] *See* Neighbors Credit Union, https://www.neighborscu.org/home/fiFiles/static/documents/PrivacyPolicy.pdf (last visited May 13, 2025); *see also Our Security Standards,* Neighbors Credit Union, https://www.neighborscu.org/home/security/standards (last visited May 14, 2025).

result, Neighbors left significant vulnerabilities in its storage of Plaintiffs' and the Class's Private Information for cybercriminals to exploit and gain access to customers' Private Information.

**B. <u>The Data Breach and Neighbors Inadequate Notice to Plaintiffs and Class Members</u>**

30. According to Defendant's Notice, it "recently" learned of a breach of its computer network and confirmed on or about January 14, 2025 of the files impacted in the Data Breach.[3]

31. Defendant's investigation revealed that an unauthorized cybercriminal accessed and acquired a cache of highly sensitive Private Information between September 20, 2024 and September 21, 2024.[4]

32. On or about May 7, 2025, more than seven (7) months after the Data Breach, Neighbors began to notify individuals that their Private Information was acquired in the Data Breach.[5]

33. Plaintiffs and Class Members provided their Private Information to Neighbors with the reasonable expectation and mutual understanding that Neighbors would comply with its obligations to keep such information confidential and secure from unauthorized access.

34. Neighbors's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

35. Neighbors knew or should have known that its electronic records would be targeted by cybercriminals.

36. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Neighbors assumed common law legal and equitable duties and

[3] A copy of Defendant's Notice Letter is attached hereto as Exhibit 1.
[4] *Id.*
[5] *Id.*

knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

37. Plaintiffs and Class Members relied on Neighbors to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendant ultimately failed to do.

C. ***Black Suit & the Dark Web***

38. Worryingly, the cybercriminals that obtained Plaintiffs' and Class Members' Private Information appear to be the notorious cybercriminal group "Black Suit."[6]

39. Black Suit is an especially notorious cybercriminal group. In fact, the Federal Bureau of Investigation (FBI) and the Cybersecurity and Infrastructure Security Agency (CISA) released a joint report warning the public about Black Suit.[7] Specifically, the joint "Cybersecurity Advisory" (CSA) stated, *inter alia*, that:

a. "BlackSuit conducts data exfiltration and extortion prior to encryption and then publishes victim data to a leak site if a ransom is not paid."[8]

---

[6] *Black Suit*, RANSOM LOOK (Oct. 18, 2024), https://www.ransomlook.io/group/black%20suit.

[7] Cybersecurity and Information Security Agency, *#StopRansomware: Blacksuit (Royal) Ransomware* (Aug. 27, 2024), https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-061a.

[8] *Id*.

b. "Phishing emails are among the most successful vectors for initial access by BlackSuit threat actors."[9]




c. "After gaining access to victims' networks, BlackSuit actors disable antivirus software and exfiltrate large amounts of data before ultimately deploying the ransomware and encrypting the systems."[10]

d. "Recently, an uptick was observed in the number of instances where victims received telephonic or email communications from BlackSuit actors regarding the compromise and ransom."[11]

e. "BlackSuit uses a leak site to publish victim data based on non-payment."[12]

40. Here, Black Suit appears to have already leaked the stolen Private Information on the Dark Web and published a "link" on or around October 18, 2024. [13]

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Black Suit*, Ransom Look (Oct. 18, 2024) https://www.ransomlook.io/group/black%20suit.

41. As the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[14]

42. Still, despite this public evidence of broad misuse, Defendant misleadingly claims in its data breach notices that "we have no evidence that your personal information has been misused as a result of this incident" and that "we are not aware of any instances of fraud or identity theft involving your information[.]"[15]

43. However, on its website, Defendant reports that:

a. "We have experienced an increased reports of fraudsters spoofing Neighbors Credit Union phone numbers on calls and text messages impersonating employees."[16]

b. "Their intent is to obtain your personal identification and account information to steal your identity and/or have access to your money."

44. On information and belief, these "fraudsters . . . impersonating employees" are part of Black Suit.

45. On information and belief, and based upon the post-incident information from the website "Have I Been Pwned" (set forth below) that Plaintiff Putney's Private Information is now on the dark web after this Data Breach, Plaintiffs' and the Class's stolen Private Information has already been published—or will be published imminently—by Black Suit on the Dark Web.

---

[14] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

[15] Office of the Atty. Gen. of Montana, *Notice of Data Breach*, https://dojmt.gov/wp-content/uploads/2025/05/Consumer-notification-letter-2.pdf (last visited May 14, 2025).

[16] Neighbors Credit Union, *Fraud & Security Center*, https://www.neighborscu.org/home/security/standards (last visited May 14, 2025).

**D. Neighbors Failed to Comply with FTC Guidelines**

46. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

47. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

48. The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

49. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

50. Neighbors was at all times fully aware of its obligation to protect the Private Information in its possession yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

51. As evidenced by the Data Breach, Neighbors failed to properly implement basic data security practices. Neighbors failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

**E. Neighbors Failed to Comply with the Gramm-Leach Bliley Act**

52. Defendant is a financial institution, as that term is defined by Section 509(3)(A) of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6809(3)(A), and thus is subject to the GLBA.

53. The GLBA defines a financial institution as "any institution the business of which is engaging in financial activities as described in Section 1843(k) of Title 12 [The Bank Holding Company Act of 1956]." 15 U.S.C. § 6809(3)(A).

54. Defendant collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period Defendant was subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1, *et seq.*, and is subject to numerous rules and regulations promulgated on the GLBA statutes.

55. The GLBA Privacy Rule became effective on July 1, 2001. *See* 16 C.F.R. Part 313. Since the enactment of the Dodd-Frank Act on July 21, 2010, the CFPB became responsible for implementing the Privacy Rule. In December 2011, the CFPB restated the implementing regulations in an interim final rule that established the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. § 1016 ("Regulation P"), with the final version becoming effective on October 28, 2014.

56. Accordingly, Defendant's conduct is governed by the Privacy Rule prior to December 30, 2011, and by Regulation P after that date.

57. Both the Privacy Rule and Regulation P require financial institutions to provide consumers with an initial and annual privacy notice. These privacy notices must be "clear and conspicuous." 16 C.F.R. §§ 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. "Clear and conspicuous means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice." 16 C.F.R. § 313.3(b)(1); 12 C.F.R. § 1016.3(b)(1). These privacy notices must "accurately reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. § 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. They must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the categories of third parties to whom the financial institution discloses the information, and the financial institution's security and confidentiality policies and practices for nonpublic personal information. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. These privacy notices must be provided "so that each consumer can reasonably be expected to receive actual notice." 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. As alleged herein, Defendant violated the Privacy Rule and Regulation P.

58. Thus, Defendant owed a duty to its former customers to provide annual privacy notices pursuant to the GLBA. However, upon information and belief, Defendant failed to provide annual privacy notices to consumers after the relationship ended, despite retaining these consumers' PII and storing that PII on Defendant's network systems.

59. Defendant failed to adequately inform its consumers that it was storing and/or sharing, or would store and/or share, the consumers' PII on an insecure platform, accessible to unauthorized parties, and would do so after the relationship ended.

60. The Safeguards Rule, which implements Section 501(b) of the GLBA, 15 U.S.C. § 6801(b), requires financial institutions to protect the security, confidentiality, and integrity of consumer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards, including: (1) designating one or more employees to coordinate the information security program; (2) identifying reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of consumer information, and assessing the sufficiency of any safeguards in place to control those risks; (3) designing and implementing information safeguards to control the risks identified through risk assessment, and regularly testing or otherwise monitoring the effectiveness of the safeguards' key controls, systems, and procedures; (4) overseeing service providers and requiring them by contract to protect the security and confidentiality of consumer information; and (5) evaluating and adjusting the information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances. 16 C.F.R. §§ 314.3 and 314.4.

61. As alleged herein, Defendant violated the Safeguards Rule.

62. Defendant failed to assess reasonably foreseeable risks to the security, confidentiality, and integrity of consumer information.

63. Defendant violated the GLBA and its own policies and procedures by sharing the PII of Plaintiffs and Class Members with a non-affiliated third party without providing Plaintiffs and Class Member (a) an opt-out notice and (b) a reasonable opportunity to opt out of such disclosure.

64. The GLBA establishes multiple duties that Defendant must comply with, and Defendant breached those duties by failing to adequately and safely store and protect Plaintiffs' and Class Members' PII, resulting in the Data Breach and subsequent injury to Plaintiffs.

## F. Neighbors Failed to Comply with Industry Standards

65. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

66. Some industry best practices that should be implemented by businesses like Neighbors include but are not limited to educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

67. Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow some or all of these cybersecurity best practices.

68. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

69. Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### G. <u>Neighbors Breached its Duty to Safeguard Plaintiffs' and Class Members' Private Information</u>

70. In addition to its obligations under federal and state laws, Neighbors owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Neighbors owed a duty to Plaintiffs and Class Members to provide reasonable security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

71. Neighbors breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Neighbors's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect individuals' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to sufficiently train its employees regarding the proper handling of its customers' Private Information;

e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f. Failing to adhere to industry standards for cybersecurity as discussed above; and

g. Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

72. Neighbors negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

73. Had Neighbors remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

74. Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with Neighbors.

### H. **Neighbors Should Have Known that Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft**

75. The FTC has hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security

incidents such as data breaches or unauthorized disclosure of data.[17] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

76. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

77. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

78. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

[17] Fed. Trade Comm'n, *FTC Information Injury Workshop, BE and BCP Staff Perspective* (Oct. 2018), https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

79. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

80. One such example of this is the development of "Fullz" packages.

81. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

82. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other Class Members' stolen Private Information are being misused, and that such misuse is fairly traceable to the Data Breach.

83. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[18] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

84. Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

85. PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

86. The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[19] The increase in

[18] *See* Fed. Trade Comm'n, *IdentityTheft.gov (Steps),* https://www.identitytheft.gov/Steps (last visited Feb. 5, 2025).

[19] *See* U.S. Dep't of Justice, *Attorney General William P. Barr Announces Indictment of Four Members of China's*

cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry.

87. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[20] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[21]

88. Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker. Beyond things like spamming individuals, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual. It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[22]

---

*Military for Hacking into Equifax* (Feb. 10, 2020), https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military.

[20] Anita George, *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

[21] Ben Luthi, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.

[22] *See Dark Web Price Index: The Cost of Email Data*, MAGICSPAM (Sept. 12, 2022), https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data.

89. The Dark Web Price Index of 2022, published by PrivacyAffairs[23] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
|---|---|
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

90. Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails. If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

91. Likewise, the value of PII is increasingly evident in our digital economy. Many companies including Neighbors collect PII for purposes of data analytics and marketing. These companies, collect it to better target individuals, and shares it with third parties for similar purposes.[24]

92. One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[25]

93. Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which

[23] *See* Patricia Ruffio, *Dark Web Price Index 2022*, PRIVACY AFFAIRS (June 10, 2023), https://www.privacyaffairs.com/dark-web-price-index-2022.
[24] *See Robinhood Financial Entities US Online Privacy Statement*, ROBINHOOD (Jan. 7, 2025), https://robinhood.com/us/en/support/articles/privacy-policy.
[25] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 RICH. J. L. & TECH. 11, 14 (2009).

consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

94. A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user. In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

95. Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiffs' PII impairs their ability to participate in the economic marketplace.

96. A study by the Identity Theft Resource Center[26] shows the multitude of harms caused by fraudulent use of PII:




[26] Steele, Jason, *Credit Card and ID Theft Statistics*, CREDITCARDS.COM (June 11, 2021), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.

97. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[27]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

98. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

99. As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**I. <u>Harms Suffered by the Class</u>**

100. Plaintiffs and Class Members entrusted their Private Information to Defendant in order to provide services and/ or receive Defendant's services.

101. Plaintiffs' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

102. As a direct and proximate result of Neighbors's actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing

---

[27] U.S. Gov't Accountability Off., *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/products/gao-07-737.

increased risk of harm, including but not limited to, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

103. Further, as a direct and proximate result of Neighbors's conduct, Plaintiffs and Class Members have been forced to spend time dealing with the effects of the Data Breach.

104. Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class Members.

105. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiffs and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiffs and Class Members.

106. Plaintiffs and Class Members also lost the benefit of the bargain they made with Neighbors. Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Class Members paid to Neighbors was intended to be used by Neighbors to fund adequate security of Neighbors's system and protect their Private Information. Thus, Class Members did not receive what they paid for.

107. Additionally, as a direct and proximate result of Neighbors's conduct, Plaintiffs and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial

accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

108. Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

109. Additionally, Plaintiffs and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[28] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[29]

110. As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiffs and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

---

[28] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD (Apr. 5, 2023), https://thequantumrecord.com/blog/data-brokers-profit-from-our-data.
[29] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Feb. 5, 2025).

111. Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. The contractual bargain entered into between Plaintiffs and Neighbors included Defendant's contractual obligation to provide adequate data security, which Defendant failed to provide. Thus, Plaintiffs and Class Members did not get what they bargained for.

112. Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

a. Monitoring for and discovering fraudulent charges;

b. Canceling and reissuing credit and debit cards;

c. Spending time on the phone with or at a financial institution to dispute fraudulent charges;

d. Contacting financial institutions and closing or modifying financial accounts;

e. Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones; and

f. Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

113. Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Neighbors, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing

personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

114. As a direct and proximate result of Neighbors's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

### J. Plaintiffs' Experiences and Damages

***Plaintiff Roxanne Putney***

115. On or around May 7, 2025, Plaintiff Roxanne Putney, received a personalized Data Breach letter from Defendant stating her Private Information, including at least her name and financial account number, had been exposed in the Breach.

116. Plaintiff had a checking account with U.S. Bank between 1989 and 2020 that included an overdraft collection loan. At some point during the time Plaintiff Putney held this account, the overdraft collection loan was sold to Neighbors, resulting in Neighbors acquiring and storing Plaintiff Putney's Private Information.

117. Defendant obtained Plaintiff's Private Information from Plaintiff, including her Social Security number, as a condition of providing financial services for Plaintiff.

118. As a result, Plaintiff was injured by Defendant's Data Breach.

119. Plaintiff is very careful about the privacy and security of her Private Information. She does not knowingly transmit her Private Information over the internet in an unsafe manner. She is careful to store any documents containing her Private Information in a secure location.

120. Plaintiff entrusted her Private Information to Defendant based on the mutual understanding that Defendant would use reasonable measures to protect it according to Defendant's published Privacy Policies, as well as state and federal law. Plaintiff understood based

on Defendant's Privacy Policies that a portion of the funds paid to Defendant to obtain banking and financial services would be used to provide reasonable and sufficient cybersecurity to protect her Private Information as long as Defendant stored that Private Information. On information and belief, Defendant shared this same understanding. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

121. Plaintiff provided her Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

122. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Breach.

123. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

124. Plaintiff suffered actual injury from the exposure of her Private Information — which violates her rights to privacy.

125. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

126. As a result of the Data Breach, Plaintiff spends several hours every week making reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing her online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information. Plaintiff also renews the PIN to her accounts every year now as a result of the Data Breach.

127. Plaintiff has already spent and will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Indeed, Plaintiff now spends several hours a week monitoring her accounts since receiving the Breach Notice.

128. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

129. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

130. Following the Breach, Plaintiff was alerted through the website service "Have I Been Pwned" that her information was now on the dark web and vulnerable for further use and exploitation by cybercriminals.

131. Plaintiff also began receiving a huge influx of spam phone calls, texts, and emails that are predominantly financial in nature, that are so frequent and invasive that she stopped answering her phone. The spam emails, texts, and calls are mostly financial in nature and appear targeted to mimic companies that she does business with, aimed at obtaining her login information via malware links. These spam calls, texts, and emails, are evidence that her Private Information is now available for exploitation by cybercriminals.

132. As a result of this Data Breach, Plaintiff purchased several fraud and identity theft monitoring subscription services, including Experian and LifeLock, which cost her more than $200

per year.

133. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised Private Information to gather and steal even more information.[30] On information and belief, the exposure of her Private Information on 'Have I Been Pwned', as well as the spam calls, texts, emails Plaintiff is experiencing is a result of the Data Breach.

134. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff Michael Hollis***

135. On or around May 7, 2025, Plaintiff Michael Hollis, a former customer of Neighbors who held financial accounts with Neighbors from approximately 2005 until approximately 2008, received a personalized Data Breach letter from Defendant stating his Private Information had been exposed in the Breach.

136. Defendant obtained Plaintiff's Private Information from Plaintiff, including his Social Security number, as a condition of providing banking and financial services for Plaintiff.

137. As a result, Plaintiff was injured by Defendant's Data Breach.

138. Plaintiff is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. He is careful to store any documents containing his Private Information in a secure location.

139. Plaintiff provided his Private Information to Defendant based on the mutual understanding that Defendant would use reasonable measures to protect it according to

[30] *Id.*

Defendant's published Privacy Policies, as well as state and federal law. Plaintiff understood based on Defendant's Privacy Policies that a portion of the funds he paid to Defendant to obtain banking and financial services would be used to provide reasonable and sufficient cybersecurity to protect her Private Information as long as Defendant stored that Private Information. On information and belief, Defendant shared this same understanding. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

140. Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of Private Information.

141. Plaintiff provided his Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

142. On information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

143. Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Breach.

144. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

145. Plaintiff suffered actual injury from the exposure of his Private Information — which violates his rights to privacy.

146. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

147. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts

to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information.

148. Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Indeed, Plaintiff now spends several hours a week monitoring his account since receiving his Breach Notice.

149. Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

150. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

151. Following the Breach, Plaintiff was alerted to a credit pull he did not recognize, as well as an attempt to open a bank account under his name that he did not recognize and certainly did not authorize.

152. Also following the Breach, Plaintiff was alerted to two different insurances that he did not recognize being tied to his information when he sought out treatment at his regular healthcare facility.

153. Finally, shortly after the Breach, Plaintiff began receiving a huge influx of spam

phone calls, texts, and mail, many of which discuss financial loans he does not recognize. These spam calls, texts, and mail are evidence that his Private Information is now available for exploitation by cybercriminals.

154. As a result of the aforementioned instances of fraud and identity theft, Plaintiff purchased dark web monitoring as well as a monthly subscription with Equifax.

155. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised Private Information to gather and steal even more information.[31] On information and belief, the credit pull, fraudulent attempt to open a bank account under Plaintiff's name, insurance information he did not recognize attached to his name, as well as spam calls, texts, mail Plaintiff is experiencing is a result of the Data Breach.

156. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff Theresa Johnson***

157. On or around May 7, 2025, Plaintiff Theresa Johnson, a customer of Neighbors who opened her first accounts with Neighbors in approximately 2000, received a personalized Data Breach letter from Defendant stating her Private Information, including at least her name, date of birth, Social Security number, member identification number, financial account number, and payment card number, had been exposed in the Breach.

158. Defendant obtained Plaintiff's Private Information from Plaintiff, including her Social Security number, as a condition of providing banking and financial services for Plaintiff.

[31] *Id.*

159. Indeed, shortly after receiving the Breach Notice, Plaintiff contacted Defendant to enquire about the account information that was compromised and her inability to access her financial records online. After spending almost an hour on the phone with NCU staff, she was informed by an employee that they would have to call her back. However, Plaintiff did not receive an answer to her inquiries.

160. Hearing nothing from Defendant, Plaintiff Johnson drove to the nearest NCU location, which was about a 30-minute drive from her house. Johnson waited in a lengthy line to try and get a new debit card issued. Plaintiff Johnson observed that many people were at the NCU location for the same reason Plaintiff Johnson had driven there – they were afraid as their accounts were compromised in the Data Breach. Although a new debit card was issued, Plaintiff Johnson had no assurance from Defendant that her account was not irreparably compromised.

161. As a result, Plaintiff was injured by Defendant's Data Breach.

162. Plaintiff is very careful about the privacy and security of her Private Information. She does not knowingly transmit her Private Information over the internet in an unsafe manner. She is careful to store any documents containing her Private Information in a secure location.

163. Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of Private Information.

164. Plaintiff provided her Private Information to Defendant based on the mutual understanding that Defendant would use reasonable measures to protect it according to Defendant's published Privacy Policies, as well as state and federal law. Plaintiff understood based on Defendant's Privacy Policies that a portion of the funds she paid to Defendant to obtain banking and financial services would be used to provide reasonable and sufficient cybersecurity to protect her Private Information as long as Defendant stored that Private Information. On information and

belief, Defendant shared this same understanding. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

165. Plaintiff provided her Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

166. On information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

167. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Breach.

168. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

169. Plaintiff suffered actual injury from the exposure of her Private Information — which violates her rights to privacy.

170. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

171. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing her online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information. Plaintiff also renews the PIN to her accounts every year now as a result of the Data Breach.

172. Plaintiff has already spent and will continue to spend considerable time and effort

monitoring her accounts to protect herself from identity theft. Indeed, Plaintiff now spends several hours a week monitoring her accounts since receiving his Breach Notice.

173. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

174. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

175. Following the Breach, Plaintiff began receiving a huge influx of spam phone calls,. These spam calls are evidence that her Private Information is now available for exploitation by cybercriminals.

176. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised Private Information to gather and steal even more information.[32] On information and belief, the spam calls Plaintiff is experiencing is a result of the Data Breach.

177. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff Steven Beinart***

---

[32] *Id.*

178. On or around May 7, 2025, Plaintiff Steven Beinart, a current customer of Neighbors who became a customer starting in approximately 2010, received a personalized Data Breach letter from Defendant stating his Private Information, including at least his name, financial information, date of birth, and Social Security Number, had been exposed in the Breach.

179. Defendant obtained Plaintiff's Private Information from Plaintiff, including his Social Security number, as a condition of providing banking and financial services for Plaintiff.

180. As a result, Plaintiff was injured by Defendant's Data Breach.

181. Plaintiff is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. He is careful to store any documents containing his Private Information in a secure location.

182. Plaintiff provided his Private Information to Defendant based on the mutual understanding that Defendant would use reasonable measures to protect it according to Defendant's published Privacy Policies, as well as state and federal law. Plaintiff understood based on Defendant's Privacy Policies that a portion of the funds he paid to Defendant to obtain banking and financial services would be used to provide reasonable and sufficient cybersecurity to protect her Private Information as long as Defendant stored that Private Information. On information and belief, Defendant shared this same understanding. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

183. Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of Private Information.

184. Plaintiff provided his Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

185. On information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

186. Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Breach.

187. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

188. Plaintiff does not recall ever learning that his Private Information was compromised in a data breach incident, other than the breach at issue in this case.

189. Plaintiff suffered actual injury from the exposure of his Private Information — which violates his rights to privacy.

190. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

191. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords and security features and monitoring Plaintiff's credit information.

192. Plaintiff has already spent and will continue to spend considerable time and effort to protect himself from identity theft. Indeed, Plaintiff has already spent approximately ten hours monitoring his accounts and credit information.

193. Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond

allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

194. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

195. Following the Breach, Plaintiff began receiving a huge influx of spam texts and emails. These spam texts, calls, and emails are evidence that his Private Information is now available for exploitation by cybercriminals.

196. Also following the Breach, Plaintiff was alerted by Experian that his Private Information had been found on the dark web and vulnerable for further use and exploitation by cybercriminals. Plaintiff does not recall ever being alerted that any of his Private Information was on the dark web prior to the Breach.

197. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised Private Information to gather and steal even more information.[33] On information and belief, the spam texts, calls, and emails Plaintiff is experiencing are a result of the Data Breach.

198. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

---

[33] *Id.*

***Plaintiff Leander Beatty Jr.***

199. On or around May 7, 2025, Plaintiff Leander Beatty Jr., a current customer of Neighbors who opened his first account with Neighbors approximately 20 years ago, received a personalized Data Breach letter from Defendant stating his Private Information, including at least his name, date of birth, Social Security number, member identification number, financial account number, and payment card number with expiration date, had been exposed in the Breach.

200. Defendant obtained Plaintiff's Private Information from Plaintiff, including his Social Security number, as a condition of providing banking and financial services for Plaintiff.

201. As a result, Plaintiff was injured by Defendant's Data Breach.

202. Plaintiff is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. He is careful to store any documents containing his Private Information in a secure location.

203. Plaintiff provided his Private Information to Defendant based on the mutual understanding that Defendant would use reasonable measures to protect it according to Defendant's published Privacy Policies, as well as state and federal law. Plaintiff understood based on Defendant's Privacy Policies that a portion of the funds he paid to Defendant to obtain banking and financial services would be used to provide reasonable and sufficient cybersecurity to protect her Private Information as long as Defendant stored that Private Information. On information and belief, Defendant shared this same understanding. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

204. Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of Private Information.

205. Plaintiff provided his Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

206. On information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

207. Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Breach.

208. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

209. Plaintiff suffered actual injury from the exposure of his Private Information — which violates his rights to privacy.

210. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

211. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information.

212. Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it

is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

213. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

214. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff Gloria Short-Shumate***

215. On or around May 7, 2025, Plaintiff Gloria Short-Shumate, a former customer of Defendant who opened accounts in approximately 2011 and closed them in approximately 2015, received a personalized Data Breach letter from Defendant stating her Private Information, including her name, financial information, date of birth, address, and Social Security Number had been exposed in the Breach.

216. Defendant obtained Plaintiff's Private Information from Plaintiff, including her Social Security number, as a condition of providing banking and financial services for Plaintiff.

217. As a result, Plaintiff was injured by Defendant's Data Breach.

218. Plaintiff is very careful about the privacy and security of her Private Information. She does not knowingly transmit her Private Information over the internet in an unsafe manner. She is careful to store any documents containing her Private Information in a secure location.

219. Plaintiff provided her Private Information to Defendant based on the mutual understanding that Defendant would use reasonable measures to protect it according to

Defendant's published Privacy Policies, as well as state and federal law. Plaintiff understood based on Defendant's Privacy Policies that a portion of the funds she paid to Defendant to obtain banking and financial services would be used to provide reasonable and sufficient cybersecurity to protect her Private Information as long as Defendant stored that Private Information. On information and belief, Defendant shared this same understanding. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

220. Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of Private Information.

221. Plaintiff provided her Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

222. On information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

223. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Breach.

224. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

225. Plaintiff suffered actual injury from the exposure of her Private Information — which violates her rights to privacy.

226. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

227. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts

to mitigate the impact of the Data Breach, including but not limited to time spent monitoring her financial account statements, time spent resolving fraudulent charges incurred as a result of the Breach (including traveling to the bank on multiple occasions), and time spent addressing a fraudulent medical bill.

228. Plaintiff has already spent and will continue to spend considerable time and effort addressing the fraud she has already experienced due to the Breach, as well as monitoring her accounts to protect herself from further identity theft. Indeed, Plaintiff has already spent at least six hours attempting to resolve fraud she experienced following receipt of Defendant's Breach Notice.

229. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

230. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

231. Indeed, following the Data Breach, Plaintiff received a doctor's bill via email from a hospital located in Wyoming that she did not recognize and certainly did not receive treatment from. This fraudulent bill is evidence that her Private Information is already being exploited by cybercriminals.

232. Shortly after the Breach, Plaintiff also suffered six fraudulent charges on her debit

card, resulting in her account being overdrawn and charged with penalty fees. Plaintiff was unable to pay her rent on time as a result of the fraudulent charges and penalty fees, which caused her extreme stress and anxiety. As a result of these fraudulent charges and in an effort to receive reimbursement for the penalty fees, Plaintiff was forced to spend time on multiple occasions traveling to the bank in person to resolve these issues.

233. Plaintiff also began receiving a huge influx of spam phone calls that are predominantly financial in nature, discussing loan applications for individuals Plaintiff does not recognize. These spam calls are evidence that her Private Information is already being exploited by cybercriminals.

234. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised Private Information to gather and steal even more information.[34] On information and belief the fraudulent doctor's bill, fraudulent charges, and the spam calls Plaintiff is experiencing are a result of the Data Breach.

235. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

236. Pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action as a nationwide-wide class action on behalf of themselves and the following class of similarly situated individuals:

> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach

[34] *Id.*

reported by Neighbors in May 2025 (the "Class").

237. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

238. Plaintiffs reserve the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

239. Numerosity. The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiffs and exclusively in the possession of Defendant, upon information and belief, thousands of individuals were impacted. The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals (as evidenced by sending Defendant sending them Notice Letters).

240. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

a. Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

b. Whether Defendant had respective duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third parties;

c. Whether Defendant had respective duties not to use the Private Information of

Plaintiffs and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their Private Information had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiffs and Class Members are entitled to actual damages and/or nominal damages as a result of Defendant wrongful conduct; and,

k. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

241. Typicality. Plaintiffs' claims are typical of those of the other members of the Class because Plaintiffs, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

242. Policies Generally Applicable to the Class. This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

243. Adequacy. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action and data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

244. Superiority and Manageability. The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds or thousands of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

245. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would

necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

246. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

247. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

248. Unless a class wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

249. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class wide basis.

250. Likewise, particular issues under Rule 23(c)(2) are appropriate for certification because such claims present only particular, common issues, the resolution of which would

advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant failed to timely notify the Plaintiffs and the class of the Data Breach;

b. Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c. Whether Defendant security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d. Whether Defendant failure to institute adequate protective security measures amounted to negligence and/or recklessness;

e. Whether Defendant failed to take commercially reasonable steps to safeguard their employees' Private Information; and,

f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have prevented the Data Breach.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiffs and All Class Members)

251. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

252. Neighbors knowingly required, collected, possessed, and maintained Plaintiffs' and Class Members' Private Information and, therefore, had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

253. Plaintiffs and Class Members entrusted Neighbors with their Private Information with the understanding that Defendant would safeguard and secure their information.

254. Given Defendant's collection of highly sensitive Private Information, Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information that was otherwise likely to be breached in a highly foreseeable targeted cyberattack—which then occurred because of Defendant's breach of its duty.

255. Neighbors had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information were wrongfully accessed or disclosed.

256. Neighbors had a duty to employ reasonable security measures as informed by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

257. As a financial institution under the GLBA, Neighbors had a duty to comply with the provisions of the GLBA, including the GLBA Privacy Rule, Regulation P, and the Safeguards Rule.

258. Neighbors owed a duty of care to Plaintiffs and Class Members to provide data security consistent with federal laws, industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

259. Because its duty was established when it chose to operate a business that would make it a target of cybercriminals, Neighbors' duty arose, in part, because it has a special

relationship with Plaintiffs and Class Members as a financial institution that affirmatively collects and stores the PII, including sensitive financial information, of Plaintiffs and the Class in order to provide financial services. Plaintiffs' and Class Members' willingness to entrust Neighbors with their private information was predicated on the understanding that Neighbors would take adequate security precautions given the relationship between them. Moreover, only Neighbors had the ability to protect its systems (and the Private Information it stored on them) from attack.

260. Neighborss' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Neighbors is bound by industry standards to protect confidential Private Information.

261. Neighbors was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class.

262. Moreover, Neighbors had a duty to promptly and adequately notify Plaintiffs and the Class of the Data Breach.

263. Neighbors had and continues to have a duty to adequately disclose that the Private Information of Plaintiffs and the Class within Defendant possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

264. Neighbors breached its duties, pursuant to the FTC Act, GLBA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Allowing unauthorized access to Class Members' Private Information;

d. Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

f. failing to comply with the provisions of the GLBA, including the GLBA Privacy Rule, Regulation P, and the Safeguards Rule.

265. Neighbors violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

266. Neighbors's violation of Section 5 of the FTC Act constitutes negligence.

267. Plaintiffs and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statute was intended to guard against.

268. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

269. Neighbors failed to comply with various provisions of the GLBA, including the GLBA Privacy Rule, Regulation P, and the Safeguards Rule. Its failure to do so constitutes negligence. Plaintiffs and Class Members were within the class of persons the GLBA was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statute was intended to guard against.

270. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Neighbors's inadequate security practices and prior notifications to businesses in Neighbors's industry that cybercriminals were targeting their systems and sensitive data.

271. It was foreseeable that Neighbors's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches targeting entities, like Defendant, in possession of Private Information.

272. Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Neighbors knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Neighbors's systems.

273. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

274. Plaintiffs and the Class had no ability to protect their Private Information that was in, and possibly remains in, Neighbors's possession.

275. Neighbors was in a superior position to protect against the harm suffered by

Plaintiffs and the Class as a result of the Data Breach.

276. Neighbors' duties extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

277. Neighbors admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

278. But for Neighbors's wrongful, negligent breach of duties owed to Plaintiffs and the Class, the Private Information of Plaintiffs and the Class would not have been compromised.

279. There is a close causal connection between Neighbors's failure to implement adequate security measures to protect the Private Information of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The Private Information of Plaintiffs and the Class was lost and accessed as the proximate result of Neighbors's failure to exercise reasonable care in securing and safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

280. As a direct and proximate result of Neighbors's negligence, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data

consisting of an increase in spam calls, texts, and/or emails; (viii) Plaintiffs' Private Information being disseminated on the dark web; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information.

281. As a direct and proximate result of Neighbors negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

282. Additionally, as a direct and proximate result of Defendant negligence, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Neighbors's possession and are subject to further unauthorized disclosures so long as Neighbors fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

283. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

284. Neighbors's negligent and/or reckless conduct is ongoing, in that it still holds the Private Information of Plaintiffs and Class Members in an unsafe and insecure manner.

285. Plaintiffs and Class Members are also entitled to injunctive relief requiring Neighbors to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and the Class)**

286. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set herein.

287. Neighbors provides, or provided, banking and financial services to Plaintiffs and Class Members. Plaintiffs and Class Members formed implied contracts with Neighbors regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for services from Neighbors and by Neighbors promising, through its Privacy Policy, to provide reasonable and sufficient cybersecurity to protect Plaintiffs' and the Class Members' Private Information in exchange for Plaintiffs' and the Class's provision of their Private Information and payment for Defendant's services.

288. Through Defendant's business relationship with Plaintiffs and Class Members, it knew or should have known that it must protect their confidential Private Information in accordance with Neighbors' Privacy Policies, as well as any other applicable policies, practices, and applicable law.

289. As consideration, Plaintiffs and Class Members paid money to Neighbors and/or turned over valuable Private Information to Neighbors. Accordingly, Plaintiffs and Class Members bargained with Neighbors to securely maintain and store their Private Information.

290. Neighbors accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing or receiving services.

291. In delivering their Private Information to Neighbors and/or paying for services, Plaintiffs and Class Members intended and understood that Neighbors would adequately safeguard the Private Information as part of that service based on the promises made via its Privacy Policies.

292. Neighbors's implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

293. Plaintiffs and Class Members would not have entrusted their Private Information to Neighbors in the absence of such an implied contract.

294. Had Neighbors disclosed to Plaintiffs and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and Class Members would not have provided their Private Information to Neighbors.

295. Neighbors recognized that Plaintiffs' and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and the other Class Members.

296. Neighbors violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information.

297. Plaintiffs and Class Members have been damaged by Neighbors's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT III**
**BREACH OF EXPRESS CONTRACT**
**(On behalf of Plaintiffs and the Class)**

298. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

299. Defendant provided services to Plaintiffs and Class Members.

300. Defendant solicited, offered, invited, and *required* Plaintiffs and Class Members to provide their Private Information to Defendant as a condition of receiving financial services from Defendant.

301. Plaintiffs and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

302. Defendant accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing financial services to Plaintiffs and Class Members. Defendant collected and held the Private Information of Plaintiffs and Class Members during the ordinary course of business. Holding Plaintiffs' and Class Members' Private Information was part of Defendant's regular business practices.

303. When Plaintiffs and Class Members used Defendant's services, they agreed to have their Private Information stored in Defendant's network.

304. Defendant made the following express written promises with respect to Plaintiffs' and Class Members Private Information in Defendant's Privacy Policy: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect your information."

305. In fact, when Plaintiffs applied for membership with the Defendant, they expressly agreed to the terms of the Privacy Policy, which is attached to and incorporated in Defendant's "Agreements and Disclosures" that apply to all individuals applying for or using Neighbors accounts, including Plaintiffs.

306. Plaintiffs and Class Members entrusted their Private Information to Defendant. In so doing, Plaintiffs and Class Members entered implied contracts with Defendant in which Defendant agreed to safeguard and protect such Private Information, to keep such information secure and confidential, and to timely detect any breaches of their Private Information.

307. In entering such express contracts, Plaintiffs and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

308. Plaintiffs and Class Members fully performed their obligations under their express contracts with Defendant.

309. Defendant breached its express promises it made with Plaintiffs and Class Members by failing to safeguard and protect their Private Information and by failing to notify Plaintiffs and Class Members thereof within a reasonable time.

310. Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of such an express contract.

311. Had Defendant disclosed to Plaintiffs and Class Members that it did not have adequate computer systems and security practices in place to secure such sensitive data, Plaintiffs and Class Members would not have provided their Private Information to Defendant.

312. As a direct and proximate result of Defendant's breach of the express contracts, Plaintiffs and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class)**

313. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

314. This Count is pleaded in the alternative to Count II above.

315. Plaintiffs and Class Members conferred a benefit on Neighbors by turning over their Private Information to Defendant in exchange for cybersecurity protection to sufficient to safeguard their Private Information. Plaintiffs and Class Members did not receive such protection.

316. As such, a portion of the revenue made from Plaintiffs' and Class Members' contribution is to be used to provide a reasonable and adequate level of data security consistent with the promises in Neighbors' Privacy Policies and that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Neighbors.

317. Neighbors has retained the benefits of its unlawful conduct that should have been used for adequate cybersecurity practices that it failed to provide.

318. Neighbors knew that Plaintiffs and Class Members conferred a benefit upon it, which Neighbors accepted. Neighbors profited from and used the Private Information of Plaintiffs and Class Members for business purposes, while failing to use the earnings emanating therefrom for adequate data security measures that would have secured Plaintiffs' and Class Members' Private Information and prevented the Data Breach.

319. If Plaintiffs and Class Members had known that Neighbors had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

320. Due to Neighbors's conduct alleged herein, it would be unjust and inequitable under the circumstances for Neighbors to be permitted to retain the benefit of its wrongful conduct.

321. As a direct and proximate result of Neighbors's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Neighbors's possession and is subject to further unauthorized disclosures so long as Neighbors fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

322. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Neighbors and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Neighbors from its wrongful conduct. This can be accomplished by

establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

323. Plaintiffs and Class Members may not have an adequate remedy at law against Neighbors, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek the following relief:

a. An order certifying the Class, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs is a proper representative of the Class requested herein;

b. Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Neighbors to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e. An order requiring Neighbors to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

Dated: May 5, 2026

By: */s/ Raina C. Borrelli*

Raina C. Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsmile: (872) 263-1109
raina@straussborrelli.com

John F. Garvey, #35879 (MO)
Colleen Garvey, #72809 (MO)
**STRANCH, JENNINGS & GARVEY, PLLC**
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com

J. Gerard Stranch, IV (TN BPR #23045)*
Grayson Wells #73068 (MO)
**STRANCH, JENNINGS, & GARVEY, PLLC**
The Freedom Center
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

Gary M. Klinger
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

Jonathan S. Mann (ASB-1083-A36M)*
**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
jonm@pittmandutton.com

Andrew J. Shamis
Leanna Loginov*
**SHAMIS GENTILE**
14 NE Ave, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
ashamis@shamisgentile.com
lloginov@shamisgentile.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

Anthony L. Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Leigh Montgomery*
Texas Bar No. 24052214
Service only: service@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, TX 77006
Tel: (888) 350-3931
lmontgomery@eksm.com

*Additional Plaintiffs' Counsel*

* *Pro Hac Vice* admitted or forthcoming

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on May 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 5th day of May, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*

Raina C. Borrelli
raina@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109